IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| HARRIS RESEARCH, INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>JEFF LYDON; LISA SMITH; and JOHN DOES I - X,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND PRELIMINARY INJUNCTION<br><br><br>Case No. 1:06-CV-136 TS |

## I.  INTRODUCTION

This matter came before this court upon Plaintiff's Motion for Preliminary Injunction. Plaintiff brings this action alleging trademark infringement and trademark dilution pursuant to 15 U.S.C. § 1114 and §1125.   Plaintiff now seeks to enjoin Defendant's use of their mark pending resolution on the merits.

The Court finds that Plaintiff has shown all elements necessary to the issuance of a preliminary injunction and will issue the preliminary injunction as follows.

## II.  FINDINGS OF FACT

Defendants were personally served with the Complaint on November 5, 2006.[1] They have not filed an answer.[2]  Plaintiff served its Motion for Preliminary Injunction to Defendants at the same address where they were personally served with the Complaint.[3] Defendants have failed to file any response to Plaintiff's Motion for Preliminary Injunction.

Plaintiff supports its Motion for a Preliminary Injunction with affidavits and exhibits that show the following:

Plaintiff is the owner of the word mark "Chem-Dry," Registration Nos. 1119887 and 1357192 (the "Trademark").  There are currently over 4,000 Chem-Dry franchises throughout the world, with 2,600 locations throughout the United States.

According to brand research conducted by Brand Force Inc. and Dan Jones & Associates, Inc. in 2001, "Chem-Dry is perceived to be a professional, well-respected person in whom one can place a great deal of confidence and trust." According to the brand research, aided awareness of the Chem-Dry brand among current customers is 100%, with total unaided awareness of the Chem-Dry brand being the highest in the industry.

---

[1] *See* Docket Nos. 4, 5 (returns of service).

[2] Plaintiff has not yet moved for a default.

[3] *See* Docket No. 6, at 2, and No. 7, at 11 (certificates of service).

The Plaintiff and its licensees and franchisees spent more than an estimated $22,000,000 during 2006 in advertising and promoting the Chem-Dry brand and related products and services.

In addition to the carpet-cleaning franchises, the Chem-Dry brand is used on, among other things, the following products and services: (a) national accounts for carpet and upholstery cleaning services; (b) carpet protection products; (c) odor removers, disinfectants and stain removers; (d) commercial carpet cleaning equipment and accessories; and (e) a wide variety of home care products.

Millions of customers have used Chem-Dry carpet cleaning services and purchased Chem-Dry products.

The Defendants have offered for sale and/or distribution t-shirts and stickers containing a "Chem-Who?" logo (the "Infringing Mark").  Distribution of the Infringing Mark has occurred by distributing t-shirts at an industry trade show.

The color and stylized design of the Infringing Mark are virtually identical to the Trademark; the font of the letters is identical, the colors are the same, and the use of the "swoosh" is identical.

### III.   CONCLUSIONS OF LAW

A.   Standard for Injunction

Under the Lanham Act, a court may grant an injunction "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a).   A party seeking injunctive relief must establish four factors:

>   (1) it will suffer irreparable harm if the injunction is not granted,
>   (2) its threatened injury outweighs the harm caused to the

> opposing party as a result of the injunction, (3) the injunction is not adverse to the public interest, and (4) it has a substantial likelihood of success on the merits of the case.

"[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."

\* \* \*

"In defining the contours of irreparable harm, case law indicates that the injury must be both certain and great, and that it must not be merely serious or substantial."[4]

B.  Likelihood of Success on Merits

1.  Trademark Dilution by Tarnishment

In addition to seeking an injunction for the alleged trademark violation, Plaintiff seeks an injunction under the Federal Trademark Dilution Act (FTDA).[5]

"Tarnishment occurs when the plaintiff's trademark is likened to products of low quality, or is portrayed in a negative context. When the association is made through harmless or clean puns and parodies, however, tarnishment is unlikely.[6]

A claim for an injunction based on trademark dilution by tarnishment is brought under section 1125, which provides:

---

[4]*Lorillard Tobacco Co. v. Engida,* 2007 WL 39207, \*2 (10th Cir. 2007) (quoting *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260-63 (10th Cir. 2004)).

[5]15 U.S.C. § 1125(c).

[6]*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC,* 464 F.Supp.2d 495, 503 (E.D. Va. 2006) (quoting *Jordache Enters. v. Hogg Wyld, Ltd.*, 625 F.Supp. 48, 57 (D. N.M.1985), *aff'd*, 828 F.2d 1482 (10th Cir.1987)). The Court notes that *Jordache*, also involved a claim for dilution by tarnishment under New Mexico law.

> Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.[7]
>
> The term "dilution" means the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of-
> >   (1) competition between the owner of the famous mark and other parties, or
> >   (2) likelihood of confusion, mistake, or deception.[8]
>
> "[A]ctual dilution must be established . . . "[9]

A claim of trademark dilution rests on four factors: (1) famousness of the mark, (2) use of the mark in commerce, (3) use of the mark after it became famous, and (4) dilution of the quality of the mark.[10] "Tarnishment results when one party uses another's mark in a manner that tarnishes or appropriates the goodwill and reputation associated with the mark."[11]

   a.   *Famousness of the Trademark*

As set forth in 15 U.S.C. § 1125(c)(2)(A):
a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of

---

[7] 15 U.S.C.A. § 1125(c)(1).

[8] 15 U.S.C. § 1127.

[9] *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 433 (2003).

[10] 15 U.S.C. § 1125(c)(1).

[11] *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 670 (5th Cir. 2000).

the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:

(i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

(ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.

(iii) The extent of actual recognition of the mark.

(iv) Whether the mark was registered . . .

Plaintiff has shown that the Trademark is widely recognized by the general public in connection with carpet cleaning services.  The Plaintiff has been using the Trademark since 1977, and it has been registered since June 12, 1979.  The Trademark is used in advertising throughout the world, and there are currently nearly 4,150 Chem-Dry franchisees.  Plaintiff has shown that it is a famous mark.

    b.    *Use of the Mark in Commerce*

Plaintiff has shown that the Defendants have used the Infringing Mark in connection with the sale and distribution of t-shirts at an industry trade show.  Accordingly, the Infringing Mark has been used in commerce.

    c.    *Use of the Mark After It Became Famous*

The Trademark was first used in 1977 and was registered in 1979.  The Defendants' conduct commenced in 2006, by which time the Trademark was in use worldwide.

    d.    *Dilution by tarnishment*

"'[D]ilution by tarnishment' is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark."[12]  In this case the Infringing Mark of Chem-Who? harms the reputation of the Trademark by creating a negative association that constitutes tarnishment.  Furthermore, the Infringing Mark contains the words, "Stickin It To The Little Guy," which, by use of the words "Chem-Who?" and a style, font and trade dress that are identical to the Trademark, are attributed to Chem-Dry.  Unlike cases involving permissible parodies, this case involves products and services that are similar and are in competition.

Plaintiffs have shown that they are likely to prevail on the merits of their trademark dilution by tarnishment claim.

   2.   Trademark Infringement

"The unauthorized use of 'any reproduction, counterfeit, copy, or colorable imitation' of a registered trademark in a way that 'is likely to cause confusion' in the marketplace concerning the source of the different products constitutes trademark infringement under the Lanham Act." The party alleging infringement has the burden of proving likelihood of confusion.[13]

The central inquiry in a trademark infringement case is the likelihood of confusion between a defendant and plaintiff's marks.  The Tenth Circuit Court of Appeals has identified a list of factors to consider in making this determination:

   (a) the degree of similarity between the marks;

---

[12] 15 U.S.C. § 1125(c)(2)(C).

[13] *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1238 (10th Cir. 2006) (quoting *Universal Money Ctrs., Inc. v. AT & T Co.*, 22 F.3d 1527, 1529 (10th Cir.1994) and citing 15 U.S.C. § 1114(1)(a)-(b)).

(b) the intent of the alleged infringer in adopting its mark;

(c) evidence of actual confusion;

(d) the relation in use and the manner of marketing between the goods or services marketed by the competing parties;

(e) the degree of care likely to be exercised by purchasers; and

(f) the strength or weakness of the marks.[14]

"[E]ven if . . . one factor does weigh in favor of Defendants, one factor alone is not dispositive of the likelihood of confusion."[15]

    a.    *Similarity of the Marks*

The marks at issue in this case are virtually identical in design, the stylized lettering in the words are the same, there are only three letters that are different in the marks, and the graphics are virtually identical.  This high degree of similarity weighs heavily in favor of infringement.

    b.    *Intent of the Alleged Infringer*

Evidence on the Defendants' intent is the negative connotation of their use. Substitution of the word "who" for "dry" and the use of the phrase "sticking it to the little guy."  This indicates that Defendants chose to use the very similar mark based on a desire

---

[14]*Low Book Sales and Leasing, Inc. v. Below Book Motors, Inc.*, 2007 WL 389229, *1  (D. Utah 2007)  (quoting *Team Tires Plus, LTD. v. Tires Plus, Inc.*, 394 F.3d 831, 832 (10th Cir. 2005)).

[15]*Australian Gold*,  436 F.3d at 1240.

8

to associate themselves with the famousness of Plaintiff's mark. This factor weighs in favor of infringement.

    c.    *Evidence of Actual Confusion*

Plaintiff has presented no evidence of actual confusion. However, such evidence is not necessary to establish infringement.[16]

    d.    *Relation in Use and Manner of Marketing*

"The greater the similarity between the products and services, the greater the likelihood of confusion."[17] Plaintiff's evidence shows a similarity of products—carpet cleaning tools and products and services. The products and services offered by Defendants are carpet cleaning-related. This factor weighs in favor of infringement.

    e.    *Degree of Care Likely to be Exercised by Purchasers*

There is no evidence on the degree of care with which the public will choose the parties' respective products in the marketplace.

    f.    *Strength of the Infringed Mark*

> To determine the relative strength of plaintiff's trademark, we place the mark in one of five categories of increasing distinctiveness and strength: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. We have defined these terms as follows:
>> A generic term is a term used to describe the relevant type or class of goods. It is the weakest mark and cannot become a trademark under any circumstances. A descriptive term describes a characteristic of a product or service.... The third, and stronger, mark is the suggestive mark, which suggests rather than describes a characteristic of the product and

---

[16] *Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 556 (10th Cir. 1998).

[17] *Id*. at 557.

>    requires the consumer to use imagination and perception to
>    determine the product's nature. Finally, the arbitrary or fanciful
>    mark is the strongest mark. [18]

It appears that the Trademark is suggestive. Plaintiff's evidence shows that the Trademark is recognized worldwide, not only within the carpet cleaning industry, but also among consumers.[19] For the purposes of this injunction proceeding, Plaintiff has shown that it is strong. Therefore this factor weighs heavily in favor of a finding of infringement.

g. *Degree to Which the Products or Services Compete*

There is direct competition between the Plaintiff and the Defendants in the carpet cleaning industry. Both the Plaintiff and the Defendants manufacture and distribute carpet cleaning tools. The companies operate in the same sphere and both appeared at the same industry trade show in September of 2006.[20]

h. *Existence of an Intent to Trade on the Trademark's Goodwill*

The Defendants' use of the Trademark at an industry trade show establishes their intent to trade upon its famousness and goodwill for their own commercial purposes.

i. *Evidence of Actual Confusion*

"Although evidence of actual confusion is useful and persuasive in typical infringement cases, it is important to remember 'it is the *likelihood* of confusion that serves

---

[18] *Id*. at 556 (quoting *First Sav. Bank v. First Bank System, Inc*., 101 F.3d 645, 654-55 (10th Cir. 1996)) (other citations omitted).

[19] *See* Jensen Aff.at ¶¶ 5-10.

[20] Rodeback Aff. at ¶ 2.

10

as a test for infringement, not actual confusion.'"[21] The likelihood of confusion can be ascertained from the Infringing Mark itself; the stylized components of the mark are identical, and the only difference is in three letters of the word portion of the mark.[22] Plaintiff has shown the likelihood of confusion and therefore, has shown it is likely to prevail on the merits of its infringement claim.

   C.  Irreparable Harm.

The "Supreme Court recently disapproved the use of categorical rules in connection with injunctive relief in intellectual property actions"[23] and Plaintiff must show irreparable injury to support a preliminary injunction.  The Court finds Plaintiff has met its burden of showing irreparable injury by showing likelihood of confusion and that its trademark is being diluted and that the reputation of its mark is being harmed.  Plaintiff has expended substantial amounts of time, money, and resources in establishing the fame and quality of the Trademark.  It is recognized nationwide and represents goodwill

---

[21] *American Dairy Queen Corp. v. New Line Productions*, 35 F.Supp.2d 727, 732 (D. Minn. 1998) (quoting *Aveda Corp. v. Evita Marketing, Inc.*, 706 F.Supp. 1419, 1430 (D. Minn. 1989)) (emphasis in original).

[22] *See Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F.3d 964, 973 (10th Cir. 2002) ("One who adopts a mark similar to another already established in the marketplace does so at his peril, because the court presumes that he can accomplish his purpose: that is, that the public will be deceived.  All doubts must be resolved against him."(quoting *Beer Nuts Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 941 (10th Cir. 1983)).

[23] *Lorillard Tobacco,* 2007 WL 39207, at *2 (citing *eBay, Inc. v. MercExchange, L.L.C.,* 126 S. Ct. 1837, 1840-41 (2006)).

acquired over thirty years of continuous use.  In light of the foregoing, the Defendants' use of the Trademark creates a substantial risk of irreparable harm.

    D.  Balance of Harm

There is no evidence of any damages that the Defendants might suffer if enjoined from continuing to use the "Chem-Who?" mark.  There is evidence that Plaintiff's considerable investment in its trademark will be harmed if an injunction is not issued. The Court finds that the threatened injury to Plaintiff outweighs the harm caused to Defendants as a result of the injunction.

    E.  Public Interest

Infringement and dilution of trademarks are inherently contrary to the public interest.[24]  The Court finds that issuance of the requested injunction would not be adverse to the public interest.

    F.  Bond

The Court will impose a bond of $5,000 for the issuance of the injunction.

## IV.  ORDER AND PRELIMINARY INJUNCTION

Based upon the foregoing it is therefore

ORDERED that Plaintiff's Motion for a Preliminary Injunction (Docket No. 6) is GRANTED and will be effective upon the filing of a bond in the amount of $5,000.  It is further

---

[24] *See Autoskill Inc. v. National Educ. Support Syst.*, 994 F.2d 1476, 1499 (10th Cir. 1993) ("In copyright cases, we think [the public interest] factor normally weighs in favor of the issuance of an injunction because the public interest is the interest in upholding copyrights protections.").

ORDERED AND ADJUDGED that Defendants Jeff Lydon and Lisa Smith, their officers, agents, servants, employees and attorneys and all other persons in active concert or participation with them, are restrained from reproducing, copying, colorably imitating, or otherwise using Plaintiff's "Chem-Dry" trademark, or any other term or mark confusingly similar thereto, specifically including the name "Chem-Who?"

DATED this 5th day of April, 2007.

BY THE COURT:

_____
Ted Stewart
U.S. District Court Judge